| | | |
|---|---|---|
| In Re: Merger of: Universal Volunteer Fire Department into Point Breeze Volunteer Fire Association | : : : : | |
| | : : | No. 1060 C.D. 2019 Argued: May 15, 2020 |
| Appeal of: Penn 7 Volunteer Fire Department and North Bessemer Volunteer Fire Department | : : : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE BROBSON                    FILED:  July 1, 2020

Appellants Penn 7 Volunteer Fire Department (Penn 7) and North Bessemer Volunteer Fire Department (North Bessemer) appeal the July 10, 2019 order of the Court of Common Pleas of Allegheny County, Orphans' Court Division (Orphans' Court),[1] which approved the merger of Appellees Universal Volunteer Fire

---

[1] The Orphans' Court has jurisdiction over Pennsylvania nonprofit corporations and the distribution of property committed to charitable purposes as part of the merger of a nonprofit corporation.  15 Pa. C.S. § 5546(b); Pa. R.J.A. No. 2156.  In addition to other matters which by law are to be heard and determined by the orphans' court division of a court of common pleas, the division shall hear and determine the following matters:

> (1) Nonprofit corporations.  The administration and proper application of property committed to charitable purposes held or controlled by any domestic or foreign nonprofit corporation and all matters arising under Title 15 of the Pennsylvania Consolidated Statutes (relating to corporations and unincorporated associations) or otherwise where is drawn in question the application, interpretation or enforcement of any law regulating the affairs of nonprofit corporations holding

Department (Universal) and Point Breeze Volunteer Fire Association (Point Breeze).[2]  We affirm.

## I.  BACKGROUND

Universal is a fire department incorporated in October 1930.  (Reproduced Record (R.R.) at 199a.)  Universal's original application for incorporation stated that the purpose of the department was "[t]o support the fire engine, hook and ladder, hose, and all other equipment of a like and similar nature for the control of fires." (R.R. at 258a.)   The original application for incorporation also provided that ownership and use of funds and assets through "[f]ees and dues, as well as money derived from all other sources shall be applied to promote the purpose for which the corporation is formed." (*Id.*)  Universal's constitution and bylaws further described its purpose as to "preserve life and property and render assistance to any emergency which may arise in the Municipality of Penn Hills [(Municipality)], and vicinity." (R.R. at 80a.)  Universal amended its statement of purpose in December 2010, in relevant part, to provide:

or controlling any property committed to charitable purposes, or of the members, security holders, directors, officers, employees or agents thereof, as such.

Pa. R.J.A. No. 2156(1).

[2] The Office of Attorney General (OAG), which participated in the matter before the Orphans' Court, advised by letter dated January 6, 2020, that it is not participating in this appeal. Because Universal's and Point Breeze's proposed merger involves nonprofit charitable corporations, the OAG must be a party of record because the public, as the real party in interest in the trust is otherwise not represented. *Com. ex rel. Corbett v. Citizens Alliance for Better Neighborhoods, Inc.*, 983 A.2d 1274, 1278 (Pa. Cmwlth. 2009).  The authority of the OAG in this regard is now codified in Section 7735(c) of the Uniform Trust Act, 20 Pa. C.S. § 7735(c), which vests the OAG with the broad power "to enforce a charitable trust."

> Amendment 2: The place in this state where the principal office of the Corporation is to be located is [in] the Municipality of Penn Hills, County of Allegheny; and
>
> Amendment 3: Said corporation is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code,[3] or the corresponding section of any future federal tax code.

(R.R. at 96a.)

Universal, in terms of assets and funding, holds a long-term lease on real property located at Universal Memorial Park in the Municipality. (R.R. at 115a-117a.) Universal purchased its vehicles and equipment and provided firefighter stipends out of its funds. (R.R. at 203a.) Until April 2015, Universal received an annual donation from the Municipality in the amount of $42,000.00, but Universal did not apply the funds toward asset acquisition or maintenance. (R.R. at 202a-204a.) Universal is one of numerous fire companies in or near the Municipality. (R.R. at 608a, 609a.)

In March 1927, three years prior to Universal's incorporation, Point Breeze incorporated as a fire department. (R.R. at 547a.) Point Breeze's original application for incorporation stated that the purpose of the department was "[t]o support the fire engine, hook and ladder, hose, and all other equipment of a like and similar nature for the control of fires." (*Id*.) The original application for incorporation also provided that ownership and use of funds and assets of Point Breeze through "[f]ees and dues, as well as money derived from all other sources shall be applied to promote the purpose for which the corporation is formed." (*Id*.)

---

[3] 26 U.S.C. § 501(c)(3).

Point Breeze amended its articles of incorporation in February 2010, in relevant part, to provide:

> Eleventh: Said organization is organized exclusively for charitable, religious, educational and scientific purposes, including, for such purposes, the making and distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future tax code.

(R.R. at 146a.) Point Breeze's constitution and bylaws further provided that its purpose "shall be for the prevention of fires and the preservation of life and property during fires or any other public menaces that occur in the Municipality of Penn Hills or in the vicinity of said Municipality." (R.R. at 150a.)

Patricia Berg, a former resident of the Municipality, lived on the same street as Universal's fire station. (R.R. at 519a, 629a.) Among the founding members of Universal was John Baine, the grandfather of Patricia Berg. (R.R. at 638a.) Three other family members were also listed in the original charter. (*Id.*) Patricia Berg's Last Will and Testament, dated August 14, 2015, provided the following bequest (Berg Bequest):

> I give and bequeath ten per cent (10%) to the Universal Volunteer Fire Department (Penn Hills No. 6), 2240 Main Street, Municipality of Penn Hills, Allegheny County, Pennsylvania, in memory of my grandfather, John W. Baine.

(R.R. at 611a, 638a.) After Patricia Berg's death on September 15, 2015, her Last Will and Testament was probated at the Court of Common Pleas of Allegheny County, Wills/Orphans' Court Division docket number 02-15-05967. (R.R. at 519a.) On June 1, 2017, the Honorable Michael E. McCarthy entered an order, holding, *inter alia*, that the Municipality was the proper party to receive the distribution to Universal and directing the Municipality to hold the funds in a

4

segregated account until further order of the Court. (R.R. at 611a.) The Municipality received a distribution from the Estate of Patricia Berg in the amount of $360,660.83 and is holding said funds in a segregated account. (R.R. at 610a, 611a.) The monies associated with the Berg Bequest to Universal are more than $600,000.00. (R.R. at 209a.)

In December 2016, Universal and Point Breeze signed a plan of agreement and merger. (R.R. at 9a-16a.) Under the terms of the agreement, Universal would merge with Point Breeze "to unify as one corporate entity maximizing resources and to improve community service for emergency services within the communities." (R.R. at 9a.) Further, Universal would transfer all assets and liabilities to Point Breeze as the surviving corporation. (*Id.*)

On December 19, 2016, while Universal and Point Breeze were planning their merger, the Municipality adopted and approved two resolutions and one ordinance. (R.R. at 29a-32a.) The Municipality's Resolution Number 2016-071 provided:

> The North Bessemer Volunteer Fire Department Station 22 and Penn 7 Volunteer Fire Department Station 227 is [sic] hereby authorized to provide such services to the citizens of the Universal 226 Fire District as may be necessary for the protection of property and persons situated therein, which include, by way of example and not of limitation, the extinguishment and prevention of loss of life and property from fire, automobile accidents, medical emergencies, hazardous materials incident, and other dangerous situations.

(R.R. at 31a.) The Municipality's Resolution Number 2016-072 provided:

> The Municipality of Penn Hills hereby revokes any and all authorizations granted to the Universal Volunteer Fire Department Station 226 to operate as a fire department and/or emergency service provider for the Municipality of Penn Hills. This is to include [e]ngage [sic] in any type of drill, training, ceremony, and fund raising.

5

(R.R. at 32a.) The Municipality's Ordinance Number 2016-2493, deeming the actions necessary "for the purpose of promoting the health, safety, and general welfare of the Municipality," decertified Universal as a fire protection and emergency services provider and appointed North Bessemer and Penn 7 as the fire protection and emergency service providers for Universal's Fire District 226. (R.R. at 29a.)

The Municipality notified the Allegheny County Department of Emergency Services of the ordinance and resolutions on December 20, 2016, and advised it that the Municipality would no longer be covering Universal with workers' compensation and vehicle insurance. (R.R. at 33a.) Universal, following decertification, returned all municipal equipment to the Municipality but otherwise remained in existence. (Orphans' Court Order at 5.) Universal did not appeal or contest the ordinance. (R.R. at 607a.)

Universal and Point Breeze filed a petition with the Orphans' Court for the "Approval of the Plan of Merger" on February 23, 2017, seeking approval from the Orphans' Court to merge and create a surviving corporation—Point Breeze Volunteer Fire Association—and "to become one Fire Company providing services to those same municipal jurisdictions and fire districts as prior to the [m]erger." (R.R. at 6a.) Universal and Point Breeze attached to the petition for merger their executed agreement and plan of merger; a statement of merger filed with the Department of State, Bureau of Corporations and Charitable Organizations; and a letter dated January 9, 2017, addressed to the OAG, informing it of the proposed merger. (R.R. at 1a-22a.) Universal copied the Municipality on the letter. (R.R. at 22a.)

6

The Municipality filed a response in opposition to the petition for merger, citing Universal's decertification and the subsequent certification of North Bessemer and Penn 7 to provide fire and emergency services in Universal's former fire district. (R.R. at 26a.) The Municipality also asserted that the OAG had not provided a letter of "no objection," and the time period for action by the OAG had not expired. (R.R. at 27a.)

North Bessemer, Penn 7, and Penn Hills Volunteer Fireman's Relief Association (Relief Association) filed an objection to the merger of Universal and Point Breeze, asserting that, due to the decertification of Universal and the provision of fire and emergency services by North Bessemer and Penn 7 to the fire district previously serviced by Universal, "the assets of [Universal] would be distributed to the volunteer fire departments that are responding to fire and emergency calls in [Universal's] district, *i.e.*, [North Bessemer] and [Penn 7]" pursuant to the doctrine of *cy pres*. (R.R. at 54a, 55a; (Original Record (O.R.), Item No. 5 at 3-4.) They asserted that, prior to the decertification, Universal "*received relief funds to purchase equipment and it owns substantial assets[,] all of which may be the subject of an action under the legal principle known as '[c]y [p]res.'*" (R.R. at 54a; O.R., Item No. 5 at 3.) North Bessemer, Penn 7, and the Relief Association requested that the Orphans' Court deny the petition for merger, require Universal to account for its assets, distribute those assets to North Bessemer and Penn 7, and require Universal to account to the Relief Association for the use of funds that were provided to Universal to purchase firefighting and emergency services equipment. (R.R. at 55a.)

Universal filed preliminary objections to the objection, asserting that North Bessemer, Penn 7, the Relief Association, and the Municipality lack standing in this matter. (R.R. at 62a-73a.) Universal also asserted that the doctrine of *cy pres* does

7

not apply to the petition for merger, but, unlike the objection to merger, it related the doctrine specifically to the Berg Bequest. (R.R. at 72a, 73a.) North Bessemer, Penn 7, and the Relief Association responded, noting that the Berg Bequest "was reported to the audit judge as being subject to adjudication under the doctrine of *cy pres*." (R.R. at 172a.) North Bessemer, Penn 7, and the Relief Association clarified that they do not object to the merger of Universal with Point Breeze. (R.R. at 173a.) Rather, they object to the terms of the merger. (*Id*.) They contend that, because North Bessemer and Penn 7 now fulfill the charitable purposes of Universal (as stated in its Constitution and Bylaws) to respond to fires and emergencies within the Universal district, under the doctrine of *cy pres*, the real and personal property of Universal should be divided between Penn 7 and North Bessemer because they are fulfilling the charitable purpose Universal can no longer perform. (*Id*.) Further, they submit that the Relief Association has funded the purchase of much of the personal property owned by Universal and this property should be divided between Penn 7 and North Bessemer or returned to the Relief Association. (*Id*.)

Thereafter, North Bessemer and Penn 7 filed a motion for protective order, in which they averred that the matter involves the resolution of the petition for merger *and* the disposition of approximately $350,000 as a result of the Berg Bequest, as well as real property and other personal property owned by Universal, which they contend are subject to the *cy pres* doctrine. (O.R., Item No. 13 at 1.) It does not appear that the Orphans' Court ever ruled on the motion, although it appears that the issue may have been resolved during a status conference addressing a variety of matters related to the case.

Ultimately, by opinion and order dated July 10, 2019, the Orphans' Court granted the petition for merger of Universal and Point Breeze. (Orphans' Court

8

Order at 10.) In its opinion, the Orphans' Court described Universal's incorporation and its charitable purpose over time, the Berg family's historical relationship with Universal, the Berg Bequest, and the decertification of Universal. The Orphans' Court noted that, "[f]ollowing decertification, Universal returned all municipal equipment to [the Municipality] but otherwise remained in existence and, within a short time, pursued a merger with . . . Point Breeze." (Orphans' Court Op. at 5.) As to the proposed merger and Universal's assets, the Orphans' Court wrote:

> Both Universal and Point Breeze are duly organized Pennsylvania non[]profit corporations and 501(c)(3) tax exempt charitable corporations. [Point Breeze] is familiar with the call area served by Universal and has previously responded to calls within that area. If effected, the proposed merger would result in a shared utilization of Universal buildings and grounds, including a real property located at 2240 Main Street[,] Penn Hills, which is improved by a fire station and sometimes utilized as a community center for such regular events as Boy Scout and Girl Scout meetings as well as non[]profit organization and community service functions. Universal also holds a long-term lease on real property located at Universal Memorial Park. The cost of acquisition and maintenance of real property, as well as the incidental costs of property and fire insurance, utility service and improvements, have been borne by Universal without contribution from [the Municipality]. Universal has similarly borne the costs of vehicle purchases and firefighter stipends.

> Vehicles and equipment that are used in providing emergency and firefighting service as well as other personalty are owned by Universal. Although Universal had received an annual donation from [the Municipality], most recently in the amount of $42,000.00, that donation was not applied toward asset acquisition or maintenance. The most recent donation by [the Municipality] had been made in April 2015.

> The record does not support any present claim by [the Municipality] to a beneficial interest in assets held by

9

Universal.  *See*, *e.g.*, *Williams Twp. Bd. of Supervisors v. Williams Twp. Emergency Co., Inc.*, 986 A.2d 914, 921 (Pa. Cmwlth. 2009).  Nor would any past contributions by [the Municipality] to Universal necessarily provide the [M]unicipality with any derivative interest in the Berg [B]equest.

[The Municipality] and the intervening parties contend, however, that, inasmuch as Universal is no longer designated as the first responder for [the former] Universal [f]ire [d]istrict . . . , the intent of the Berg [B]equest would not be met by a distribution to Universal.  Rather, according to [the Municipality], . . . the intent of [the] Berg [B]equest would best be served by distribution of the bequest to . . . Penn 7 and North Bessemer . . . .  Since the December 2016 decertification of [Universal], Penn 7 and North Bessemer have served the former Universal [f]ire [d]istrict.  In making those assertions, [the Municipality] relies upon on [sic] the doctrine of *cy pres*.  That doctrine directs that a charitable bequest be construed in a manner which, as nearly as possible, gives effect to the apparent intent of the testatrix.

. . . .

The assertions made on behalf of Penn 7 and [North] Bessemer to the effect [that] those departments intend to apply any funds received from the Berg [B]equest toward the purchase of fire equipment does not necessarily enhance their position over that of Universal for purposes of conforming to the likely intent of the testatrix.  A difficulty with the *cy pres* argument that is urged in this case is that Universal is not a defunct entity.  It remains an extant non[]profit corporation which continues to own and maintain facilities that serve the public in the former Universal district.  [The Municipality] and the intervening fire companies neither provide nor propose to provide similar facility access or functions apart from firefighting within that district.  Ms. Berg had resided in the Universal district until her death.  In fact, she had resided on the same street as the Universal fire station.  Given that context, the observation by Universal that it has historically served a community function beyond firefighting and presently remains and is capable and willing to continue such functions suggests that the original intent of the testatrix

10

would not be frustrated by awarding the bequest to the merged companies of Universal and Point Breeze.

Further, a current objective of Universal is to merge with Point Breeze in order to continue firefighting functions. Should a merger occur through which Universal provides firefighting services in conjunction with Point Breeze, a portion of the firefighting component of Universal would remain, even if that merged department were not the primary department to serve the Universal district. Point Breeze is acknowledged to be a competent department with well-trained membership and a chief who is a state instructor. In fact, there are no municipal rules that require firefighters to reside in the districts which they service or even within the [Municipality]. Nothing would preclude the eventuality of the merged firefighting unit of Universal and Point Breeze servicing the former Universal district on necessary occasions.

. . . .

Petitioners note that the original [Universal] charter contains the name not only of the decedent's grandfather, in whose memory the bequest was made, but also three (3) other Berg family members. That would seem to lend support as well to the argument that the bequest in this matter was intended to assure Universal a continued presence within the original Universal district. Because Universal presently continues to exist and will remain functional in some capacity locally, the result consistent with the testamentary intent would be to award the Berg [B]equest to that entity. The charitable purpose of the Berg [B]equest has not been rendered unlawful, impracticable or wasteful by reason either of the decertification of [Universal] or Universal having been supplanted within [its former fire district] by [North Bessemer] and [Penn 7].

(Orphans' Court Op. at 5-9.) The Orphans' Court concluded by issuing an order granting the petition for merger and concluding that "[t]he doctrine of *cy pres* does not apply in this case." (Orphans' Court Order.) North Bessemer and Penn 7 appealed the Orphans' Court's order.

11

## II. ISSUES

On appeal,[4] North Bessemer and Penn 7 argue that the Orphans' Court, in granting the petition for merger, erred in concluding that the doctrine of *cy pres* did not apply to the case. Universal and Point Breeze counter that the Orphans' Court's decision was appropriate.[5]

## III. DISCUSSION

As we turn to the merits of the matter now before us, it is helpful to understand the relevant statutory framework. The Associations Code, 15 Pa. C.S. §§ 101-9507, applies to every association incorporated within the Commonwealth, including not-for-profit corporations. 15 Pa. C.S. §§ 101, 102. The Entity Transaction Law, set forth in Chapter 3 of the Associations Code, 15 Pa. C.S. §§ 311-376, includes provisions pertaining to the merger of associations. The Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa. C.S. §§ 5101-6146, also included within the Associations Code, sets forth specific provisions pertaining to nonprofit corporations. Finally, the Uniform Trust Act (Trust Act), 20 Pa. C.S. §§ 7701-7799.3, applies, in part, to charitable trusts.

The Entity Transaction Law allows for domestic associations to merge with one another to form a surviving association. 15 Pa. C.S. § 331(a)(1). Most relevant to this matter, Section 314 of the Entity Transaction Law, 15 Pa. C.S. § 314, addresses charitable assets and bequests contained in a will. It provides, in part:

---

[4] "On appeal from an order of [an] orphans' court, this Court's scope of review is limited to determining whether the record is free from legal error and whether the court's factual findings are supported by the evidence." *In re Estate of Berry*, 921 A.2d 1261, 1263 n.1 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 1279 (Pa. 2007).

[5] Universal and Point Breeze also argued in their brief to this Court that North Bessemer and Penn 7 lack standing to appeal, but Universal and Point Breeze conceded at oral argument on May 15, 2020, that North Bessemer and Penn 7 have standing in this appeal. Accordingly, we will not address the issue of standing in this opinion.

(c) Charitable assets.--Property held for a charitable purpose under the laws of this Commonwealth by a domestic or foreign association immediately before a transaction under this chapter becomes effective may not, as a result of the transaction, be diverted from the objects for which it was donated, granted, devised, or otherwise transferred unless, to the extent required by or pursuant to the laws of this Commonwealth concerning *cy pres* or other laws dealing with nondiversion of charitable assets, the domestic or foreign association obtains an appropriate order of a court of competent jurisdiction specifying the disposition of the property.

(d) Preservation of transfers.--Subject to subsection (c) and [S]ection 5550 [of the Nonprofit Law, 15 Pa. C.S. § 5550,] (relating to devises, bequests and gifts after certain fundamental changes), a bequest, devise, gift, grant or promise contained in a will or other instrument of donation, subscription or conveyance that is made to:

> (1) a merging association that is not the surviving association and that takes effect or remains payable after the merger inures to the surviving association. . . .

15 Pa. C.S. § 314.

Similarly, Section 5547 of the Nonprofit Law, 15 Pa. C.S. § 5547, pertaining to authority to take and hold trust property, provides:

> (a) General rule.--Every nonprofit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles. . . .

> (b) Nondiversion of certain property.--Property committed to charitable purposes shall not, by any proceeding under Chapter 59 (relating to fundamental changes) or otherwise, be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors or other body obtains from the court an order under 20 Pa. C.S. Ch. 77 (relating to trusts) specifying the disposition of the property.

13

Section 5550 of the Nonprofit Corporation Law, which is referenced by Section 314(d) of the Entity Transaction Law, provides:

> A devise, bequest or gift to be effective in the future, in trust or otherwise, to or for a nonprofit corporation which has:
>
> > (1) changed its purposes;
> >
> > (2) sold, leased away or exchanged all or substantially all its property and assets;
> >
> > (3) been converted into a business corporation;
> >
> > (4) become a party to a consolidation or a division;
> >
> > (5) become a party to a merger which it did not survive; or
> >
> > (6) been dissolved;
>
> after the execution of the document containing the devise, bequest or gift and before the nonprofit corporation acquires a vested interest in the devise, bequest or gift shall be effective only as a court having jurisdiction over the assets may order under 20 Pa. C.S. Ch. 77 (relating to trusts) or other applicable provisions of law.

As to whether the Orphans' Court erred in failing to apply the *cy pres* doctrine, Pennsylvania has adopted the Restatement (Second) of Trusts § 399 as the expression of the doctrine of *cy pres* in the Commonwealth. Section 399 provides as follows:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

14

Restatement (Second) of Trusts at § 399.  The Pennsylvania General Assembly has codified application of the *cy pres* doctrine in Section 7740.03 of the Trust Act, 20 Pa. C.S. § 7740.3, as follows:

> **(a) General rule--**Except as otherwise provided in subsection (b), if a particular charitable purpose becomes unlawful, impracticable or wasteful:
>
> (1) the trust does not fail, in whole or in part;
>
> (2) the trust property does not revert to the settlor or the settlor's successors in interest; and
>
> (3) the court shall apply *cy pres* to fulfill as nearly as possible the settlor's charitable intention, whether it be general or specific.
>
> **(b) Exception.--**A provision in the terms of a charitable trust that would result in distribution of the trust property to a noncharitable beneficiary prevails over the power of the court under subsection (a) to apply *cy pres*.

The Comment to Section 7740.3 provides that "[t]he doctrine of *cy pres* is applied not only to trusts, but also to other types of charitable dispositions, including those to charitable corporations." 20 Pa. C.S. § 7740.3, Comment.  Thus, under the *cy pres* doctrine as set forth in Section 7740.3 of the Trust Act, when a charitable bequest to a nonprofit corporation "becomes unlawful, impracticable, or wasteful," the bequest shall be construed in a manner which, as nearly as possible, gives effect to the apparent intent of the testatrix.

In their objection to the petition for merger, North Bessemer and Penn 7 argued that, because they now fulfill the charitable purposes of Universal (as stated in its Constitution and Bylaws) to respond to fires and emergencies within the Universal district, under the doctrine of *cy pres*, the real and personal property of Universal should be divided between Penn 7 and North Bessemer given that they are fulfilling the charitable purpose Universal can no longer perform.  Throughout the

15

course of the litigation, they have maintained that general theme with a slight twist—they now focus their argument on the Berg Bequest, contending that the *cy pres* doctrine prevents that particular bequest from being distributed to Universal. Not only do they dispute that the bequest may be distributed to Universal, they contend that it should be distributed to them in Universal's stead.

As noted above, Patricia Berg's Last Will and Testament included a bequest of "ten per cent (10%) to . . . Universal . . . in memory of [her] grandfather." (R.R. at 611a, 638a.) Universal and Point Breeze argue that the clear language of the Berg Bequest provides reasonable certainty that her intent was to provide Universal—*i.e.*, the nonprofit entity—with financial resources. North Bessemer and Penn 7, however, argue that the intent of the Berg Bequest was to benefit the citizens in the Universal fire district. They contend that because the Municipality decertified Universal, thereby prohibiting it from providing fire and emergency services to the Universal fire district, Universal is no longer able to meet the particular charitable purpose of the Berg Bequest. Consequently, North Bessemer and Penn 7 argue that the Orphans' Court should have applied the doctrine of *cy pres*.[6] North Bessemer's and Penn 7's argument, however, is misplaced in that it is premised on two misapprehensions: (1) that Universal's decertification to provide fire and emergency services to the Municipality and its citizens resulted in an inability to provide charitable services; and (2) that Universal's merger with Point Breeze would in some way not fulfill the terms of the Berg Bequest.

---

[6] We note that Penn 7 has stated that any portion of the Berg Bequest awarded to it would be applied to replace a fire rescue truck and other firefighting equipment. Similarly, North Bessemer has stated that any monies awarded to it would be applied toward the replacement of an outdated rescue/pumper and the purchase of rescue and firefighting equipment. Because Penn 7 and North Bessemer now service the former Universal fire district, that district would benefit from equipment modernization. (Orphans' Court Order at 6, 7; R.R. at 612a.)

16

In *In re Independent Fire Company No. 1* (Pa. Cmwlth., No. 1489 C.D. 2018, filed February 5, 2020) (*Independent*), we affirmed an order of the Court of Common Pleas of Lycoming County, denying a petition filed by the OAG. Through the petition, the OAG sought a rule to show cause why Independent Fire Company No. 1 (Independent), a volunteer fire company, should not be involuntarily dissolved and its assets distributed pursuant to the *cy pres* doctrine, given that the municipality in which it operated had decertified it. On appeal to this Court, the OAG dropped its pursuit of a voluntary dissolution. At issue before us was "whether the [OAG], without obtaining an order of involuntary dissolution under the Nonprofit Law, may acquire and transfer all the general assets of an operating, non-defunct charitable nonprofit corporation to another nonprofit pursuant to the *cy pres* doctrine as codified in the Trust Act." *Independent*, slip op. at 1.

In *Independent*, the OAG, relying on the Comment to Section 7740.3 of the Trust Act and Section 5547 of the Nonprofit Law, "maintain[ed] that all of the assets of Independent are held in trust to further its charitable purpose, as stated in the articles of incorporation." *Id.* at 6. The OAG "posit[ed] that once Independent ceased fighting fires . . . , its charitable purpose was extinguished." *Id.* Independent countered "that it is a volunteer fire company," the municipality "is not responsible for its debts or liabilities and does not exercise any financial control over it," and, "despite its decertification, it . . . is not defunct or obsolete." *Id.* In support of the continuing viability, Independent noted that "it has over $700,000.00 in assets and continues to remain a functioning nonprofit corporation that retains members, holds meetings, maintains minutes, pays bills, files taxes, maintains its real estate and equipment, enters into contracts, engages in charitable community activities, and responds to multiple emergency calls." *Id.*

17

With regard to the notion that Independent was somehow defunct as a result of its decertification, relying upon our decision in *Lacey Park Volunteer Fire Company No. 1 v. Board of Supervisors of Warminster Township*, 365 A.2d 880 (Pa. Cmwlth. 1976), we reasoned:

> [A]lthough the [municipality] may have lawfully decertified Independent from fighting fires within its borders, Independent nonetheless retains exclusive ownership of the real and personal property that it possesses and, in general, has the legal authority to decide the future of its assets and status as a charitable nonprofit corporation, *e.g.*, whether it desires to dissolve voluntarily or merge with another firefighting company. In other words, the fact that the [municipality] enacted the [o]rdinance [decertifying Independent] does not result in the destruction or cessation of Independent as a nonprofit corporation. After all, pursuant to Section 5502(a)(1) of the Nonprofit Law, a nonprofit corporation, with certain exceptions, is bestowed with "perpetual succession by its corporate name." 15 Pa. C.S. § 5502(a)(1).

*Id.* at 9. Based upon this reasoning, we reject North Bessemer's and Penn 7's assertion that Universal's decertification to provide fire and emergency services to the Municipality and its citizens resulted in an inability to provide charitable services, thereby triggering the *cy pres* doctrine.

Furthermore, we agree with the Orphans' Court that the charitable purpose of the Berg Bequest has not been thwarted by the decertification of Universal and its proposed merger with Point Breeze. Patricia Berg executed her Last Will and Testament five years after Universal amended its constitution and bylaws to move from a somewhat limited stated purpose of providing emergency services within the Municipality to add a broader purpose of supporting charitable, religious, educational and scientific purposes. Moreover, the Last Will and Testament does not in any way qualify the bequest—*i.e.*, it does not limit the bequest to support fire

18

and emergency services. Universal, despite its decertification, continues to use its facilities for charitable purposes, including as a community center for such regular events as Boy Scout and Girl Scout meetings, as well as nonprofit organization and community service functions. Moreover, the proposed merger of Universal with Point Breeze, which Universal is entitled to pursue, would allow Universal to continue firefighting functions, and, therefore, as the Orphans' Court noted, "a portion of the firefighting component of Universal would remain, even if that merged department were [sic] not the primary department to serve the Universal district." (Orphans' Court Order at 8.) "Nothing would preclude the eventuality of the merged firefighting unit of Universal and Point Breeze servicing the former Universal district on necessary occasions." (*Id*.) Thus, North Bessemer's and Penn 7's assertion that Universal's merger with Point Breeze would in some way not fulfill the terms of the Berg Bequest is without merit.

For the reasons set forth above, we conclude that the Orphans' Court did not commit an error of law when it declined to apply the doctrine of *cy pres* in this matter.

## IV. CONCLUSION

Accordingly, we will affirm the order of the Orphans' Court.

_____
P. KEVIN BROBSON, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Merger of: Universal Volunteer Fire Department into Point Breeze Volunteer Fire Association | : : : : : : : | No. 1060 C.D. 2019 |
| Appeal of: Penn 7 Volunteer Fire Department and North Bessemer Volunteer Fire Department | : : : | |

# **O R D E R**

AND NOW, this 1st day of July, 2020, the order of the Court of Common Pleas of Allegheny County, Orphans' Court Division, dated July 10, 2019, is hereby AFFIRMED.

P. KEVIN BROBSON, Judge